IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  v.<br><br>SETH P. LEVINE,<br><br>      Defendant. | Civil Action No.<br><br>Complaint for Violations of the Federal Securities Laws<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC"), One Penn Center, 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, alleges as follows against the following defendant, whose name and last known address is set forth below:

 Seth P. Levine
 636 South Forest Drive
 Teaneck, NJ 07666

## SUMMARY

1. This action involves an offering fraud scheme devised and orchestrated by Defendant Seth P. Levine ("Levine"), founder and President of Norse Holdings, LLC ("Norse Holdings"), a real estate investment and management company.

2. From 2009 through 2019, Levine fraudulently raised money through the sale of membership interests in limited liability companies ("Norse LLCs" or "LLCs"), including by defrauding family, friends, and other investors, many of whom belonged to the Orthodox Jewish community. Between February 2015 and August 2019 alone, Levine sold ownership interests in nearly 50 Norse LLCs, raising over $20 million collectively from more than 60 investors.

3. Levine falsely represented to investors that their investments would be used to purchase apartment complexes, and earn profits resulting from higher occupancies and rents, increased real estate values, and from the refinancing of the properties. In reality, however, Levine was running a massive two-part scheme.

4. First, Levine made numerous material misrepresentations and omissions to investors to induce them to invest. Levine provided investors with fraudulent documentation to show false profits, occupancy rates, and income and expense figures related to the apartment complexes. Levine also sold overlapping ownership interests in the LLCs to investors, using false operating agreements and, at times, forged signatures. Levine also failed to disclose to investors that he frequently commingled investor funds among the LLCs in order to prop up struggling operations at certain properties and to make Ponzi-like payments by using new investments to pay earlier investors.

5. Second, to prolong his fraud, Levine also perpetrated an extensive mortgage fraud scheme using the same properties. Levine provided false operating agreements, member consents, corporate documents, rent rolls, and leases to lending institutions to obtain refinance mortgages for the LLCs based on inflated property values. Levine used the proceeds of these fraudulently obtained, inflated mortgages to provide false returns to investors, encouraging future investment and keeping the scheme afloat.

6. In mid-August 2019, Levine's scheme came to an end when the FBI executed a search warrant on the offices of Norse Holdings. Shortly thereafter, Levine and Norse Holdings ceased managing the properties.

7. As a result of Levine's fraud, investors lost millions of dollars.

8. By engaging in the conduct described in this Complaint, Defendant Levine

violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

9. The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to enjoin such acts, transactions, practices, and courses of business, and to obtain disgorgement, civil monetary penalties, and such other and further relief as the Court may deem just and appropriate.

10. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11. Venue is proper in the District of New Jersey pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendant Levine resides and conducts business within the District of New Jersey. In addition, certain of the acts, transactions, practices, and courses of business constituting the violations of the federal securities laws charged herein occurred within the District of New Jersey.

12. In connection with the conduct alleged in this Complaint, Levine, directly or indirectly, made use of the means or instruments of transportation or communication in, or instrumentalities of, interstate commerce, or the mails, or the facilities of a national securities exchange.

**DEFENDANT**

13. **Seth P. Levine**, age 52, is a resident of Teaneck, New Jersey. Levine is the owner and President of Norse Holdings, which is described more fully below. At all times relevant to the facts alleged in this Complaint, Levine was responsible for and exercised complete control over the operations of Norse Holdings and Norse LLCs, including the offer and sale of securities and the use of investor monies.

**OTHER RELEVANT ENTITIES**

14. **Norse Holdings, LLC**, a New York limited liability company with its principal place of business in Hackensack, New Jersey, was a real estate investment and management company.

15. **Norse LLCs** includes at least 70 New Jersey limited liability companies, each with its principal place of business in Hackensack, New Jersey, that were established to purchase, own, and operate apartment buildings in New Jersey. Levine is the manager and the investors are the members of Norse LLCs.

**I.    Background**

16. In approximately 2005, Levine formed Norse Holdings to purchase and manage apartment buildings in the New Jersey area with funds from investors, who included family, friends, and members of his tight-knit Orthodox Jewish community.

17. Levine told investors that investor monies, including his own personal investments, would be used to cover 30 percent or more of a property's purchase price, and that he would finance the remainder through a mortgage on the property.

18. Levine established a separate LLC for each apartment building or group of apartment buildings to be purchased, representing that each LLC would keep its finances distinct

from the others.

19. Levine solicited investors to purchase membership interests in the LLCs, providing them with certain documents that he prepared or caused to be prepared, such as operating agreements, which set forth the investor's purported ownership percentage of the LLC.

20. Investors were to be passive members of the LLCs, with Levine handling management and decision making for the LLCs.

## II. Levine Defrauded Investors

21. Throughout the course of his scheme, Levine made a variety of material misrepresentations and omissions, including misrepresenting his own stake in the investments, providing false documents about the profitability of the apartment complexes, misrepresenting his use of investor funds, selling overlapping interests in the LLCs, and using new investments to make Ponzi-like payments to earlier investors.

22. During the period February 2015 through August 2019, alone, Levine raised more than $20 million through the sale of membership interests in 48 Norse LLCs to more than 60 investors who resided in New Jersey, and in multiple other states.

**Levine Misrepresented his Own Interests and Others' Ownership Interests in the Properties and Provided Investors with False Documents**

23. Orally, and in writing, Levine deceived investors by representing that he contributed a particular share of the purchase price for each property, giving him a substantial personal investment, which would incentivize him to maximize the LLC's profits.

24. In fact, the representations concerning Levine's ownership interest and personal investment in a property were often false or misleading, as he did not always personally invest in the LLCs as he falsely represented.

25. On at least one occasion, Levine sold overlapping property interests in a LLC to

multiple groups of investors, and failed to disclose the existence and ownership interests of the various groups to the other investors in the LLC. In so doing, Levine also misrepresented the size of his personal ownership interest in the LLC to those investors.

26. Levine also caused inaccurate Schedule K-1s to be provided to certain investors. These documents, which were prepared from false information that Levine provided, did not always accurately reflect the investors' ownership interests.

27. In addition, Levine deceived investors by forging the signatures of other real estate investors in certain operating agreements to make it appear as though those investors were investing in that LLC.

28. Moreover, Levine prepared and provided to certain investors schedules that contained false and inaccurate information concerning the profitability of the apartment complexes. He provided falsely inflated information about rents collected, occupancy rates, and income and expense figures. Investors who received these false documents, which purported to show that properties were performing well, were misled into investing in additional properties offered by Levine.

**Levine Misrepresented His Use of Investor Funds**

29. Levine misrepresented, both orally and in writing, how investors' funds would be used.

30. Levine represented that he would use investor funds to purchase apartment buildings held by a specific LLC in which investors would receive a membership interest, but he ignored the corporate form and failed to treat the individual LLCs as standalone entities, thereby deliberately failing to use the investors' funds as promised.

31. At times, Levine used investment monies to help prop up other failing properties

and prolong his fraud. Levine repeatedly commingled investor funds and used them to fund operations at other buildings, pay employees, pay delinquent utility bills or repay other investors.

32. As Norse Holdings' financial situation deteriorated, Levine simply took investor monies without purchasing apartment buildings. On at least two occasions, Levine took investor monies to acquire specific properties, but never purchased those properties. Instead, unbeknownst to those investors, Levine used their investments, which exceeded $675,000, to bolster other failing properties.

### Levine Paid Investors with Fake Profits to Entice Further Investment

33. To perpetuate his fraud, lull investors into believing that their investments were performing well, and entice investors to invest in additional properties, Levine paid existing investors purported returns, which he falsely claimed were profits from the operation of the apartment buildings or refinancing made possible by increased property values. However, these payments frequently derived from Levine's fraudulent conduct, not legitimate business operations.

34. At times, Levine paid purported profits through Ponzi-like payments by using monies from newly made investments to pay earlier investors. Levine also used proceeds from his related mortgage fraud scheme to pay investors purported profits.

35. In addition, in soliciting additional investments, Levine did not disclose that the only way he could avoid defaulting on the loans and prevent a financial collapse was to seek other sources of financing, specifically, new investments or refinancing other properties.

### Levine Violated the Securities Laws

36. At all times relevant to the facts alleged in this Complaint, Levine operated and controlled Norse Holdings and the related LLCs.

37. The membership interests in the Norse LLCs sold to investors by Levine are securities within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], and the fraud and other misconduct described herein was in the offer of, and/or in connection with, the purchase or sale of securities.

38. All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material. There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

39. Levine used the means or instrumentalities of interstate transportation, or communication, or of the mails, including using the internet and interstate phone calls in dealing with investors and potential investors.

40. In connection with the conduct described herein, Levine acted knowingly and/or recklessly. Among other things, Levine knew or was reckless in not knowing that he was making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances in connection with selling or offering to sell membership interests in the Norse LLCs to investors.

41. Through his material misrepresentations and omissions, Levine knowingly, recklessly, or negligently obtained money or property from investors.

42. Through this scheme, Levine knowingly, recklessly, or negligently engaged in acts, transactions or courses of business that operated as a fraud or deceit upon offerees, purchasers and prospective purchases of membership interests in the Norse LLCs.

43. As a result of Levine's fraud, he raised more than $20 million from investors.

**CLAIMS FOR RELIEF**

**FIRST CLAIM**
**Violations of Section 17(a) of the Securities Act**

44. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 43, inclusive, as if they were fully set forth herein.

45. By engaging in the conduct described above, Defendant Levine, in the offer or sale of securities, directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

  a. knowingly or recklessly employed devices, schemes, or artifices to defraud;

  b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

  c. knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

46. By engaging in the foregoing conduct, Defendant Levine violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

47. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 43, inclusive, as if they were fully set forth herein.

48. By engaging in the conduct described above, Defendant Levine knowingly or

recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

49. By engaging in the foregoing conduct, Defendant Levine violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court enter a final judgment;

### I.

Permanently restraining and enjoining Defendant Levine from, directly or indirectly, violating Section 17(a) of the Securities Act, 15 U.S.C § 77q(a);

### II.

Permanently restraining and enjoining Defendant Levine from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Defendant Levine to disgorge all ill-gotten gains derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### IV.

Ordering Defendant Levine to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u-1]; and

### V.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Respectfully submitted,

By: /s/ John V. Donnelly III
Scott A. Thompson
Jennifer C. Barry
John V. Donnelly III
Suzanne C. Abt

SECURITIES AND EXCHANGE COMMISSION
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION**

Dated: March 18, 2021

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>SETH P. LEVINE,<br><br>      Defendant. | Case No.<br><br>**DESIGNATION OF AGENT FOR SERVICE** |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th Floor, Newark, NJ 07102, shall constitute service upon the Commission for purposes of this action.

Respectfully submitted,

S/ John Donnelly
John Donnelly

Attorneys for Plaintiff
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
DonnellyJ@sec.gov